508 So.2d 875 (1987)
JACKSON & JACKSON, INC.
v.
LOUISIANA OFFSHORE INSURANCE AGENCY, INC., et al.
Nos. 86-CA-661, 86-CA-662.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1987.
*876 A.D. Freeman, Frank P. Tranchina, Jr., New Orleans, for plaintiff-appellant Jackson & Jackson, Inc.
Howard J. Ettinger, Thomas E. O'Keefe, New Orleans, for defendant-appellee Maryland Cas. Co.
Matt J. Farley, Thomas E. O'Keefe, New Orleans, for plaintiff-appellee Maryland Cas. Co.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
GAUDIN, Judge.
This appeal involves a judicial interpretation of LSA-R.S. 22:1180. The issue: If an insurance broker fraudulently overcharges an insured, can that person or entity file suit and collect the overage from an innocent insurance company? A trial judge in the 24th Judicial District Court said no. We affirm.
The statute reads:
"Any insurer which issues or delivers a policy or contract of insurance pursuant to the application or request of an agent or broker who is not authorized to represent said insurer as an agent shall be deemed to have authorized such agent or broker to receive on said insurer's behalf payment of any premium on such policy or contract of insurance. Such payment to an agent or broker shall be deemed to be payment to the insurer.
"It is not the intent of this Section to create any agency relationship except for the matter of collection of premiums specifically referred to herein."
Appellant is Jackson & Jackson, Inc., hereinafter referred to as "Jackson," which attempted to obtain workmen's compensation insurance coverage through its broker, Roy E. Currie, d/b/a Louisiana Offshore Insurance Agency, Inc. Unable to obtain a policy through conventional means, Currie submitted an application to Louisiana's assigned risk pool.
Maryland Casualty Company was selected to provide insurance for Jackson. Maryland Casualty had not done prior business with either Currie or Jackson.
An initial deposit of $6,519.00 was paid up front by Jackson to Maryland Casualty. Thereafter, monthly premiums were paid based on Jackson's payroll records. Subsequently, Jackson paid $20,966.55 to Currie (in addition to the initial deposit), a total of $17,409.41 more than the actual annual premium. The estimated annual premium was $26,074.00 but continuing audits of Jackson's records placed the final premium at much less than the estimate.
There is no doubt that Jackson paid more than it should have to Currie, that Currie did not in turn pay Maryland Casualty and that Jackson's claims against Currie are well-supported and proper.
In its district court suit against Maryland Casualty, Jackson alleged that Currie was the agent for the insurance company. This was not factual. Currie was Jackson's representative in the policy-obtaining transaction and his (Currie's) only function on behalf of Maryland Casualty was to collect the premium. The trial judge refused to impute Currie's fraudulent activity to Maryland Casualty and the testimony and evidence fully support this determination.
Whether a broker acts as agent for the insured or an insurance company is a question of fact depending on the circumstances of each case. In Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3rd Cir.1972), affirmed by the Supreme Court of Louisiana at 281 So.2d 728 (La.1973), the court stated at page 824:
"There is a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance *877 brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance."
See also Fidelity & Casualty Company of New York v. Bordelon, 428 So.2d 1162 (La.App. 5th Cir.1983) and Thibodeaux v. Lumbermen's Mut. Cas. Co., 448 So.2d 888 (La.App. 3rd Cir.1984).
Jackson argued for the first time on appeal (although not in district court) that Currie had the apparent authority to represent and act as agent for Maryland Casualty. This contention is without substance. Currie was Jackson's agent and he (Currie) had no authority, apparent or otherwise, to represent or act for Maryland Casualty except for premium collecting.
Also without merit is Jackson's assertion that Maryland Casualty was negligent in making an inflated estimate. The initial estimate was based on information and statistics submitted by Currie to the assigned risk pool and further based on existing rates. The record does not show any negligence or even any inadvertence on Maryland Casualty's part with regard to the estimated premium or with regard to anything else.
The premium was adjusted downward because of information later furnished and partially because longshoremen and harbor worker's coverage was deleted from the policy in April, 1982.
For these reasons, we affirm the June 19, 1986 judgment which dismissed Jackson's demands on Maryland Casualty and which ordered Currie to pay $17,409.41 to Jackson. Jackson is to bear costs of this appeal.
AFFIRMED.