MARVIN, Judge.
In this action on a health insurance policy, the insurer appeals a judgment awarding the insured $951 plus attorney fees and penalties which represent the cost of her *722 medical treatment and hospitalization following a miscarriage. We reverse.
The insurer relies on an exclusion in the limitations and exclusions section of the policy which says:
“This policy does not provide benefits for: “pregnancy, childbirth, miscarriage, abortion or any complication arising therefrom, except as provided in the ‘Maternity coverage,’ if any, issued with this Policy.”
No maternity coverage was “issued” with the policy.
The surgical benefits section of the policy, however, effectively provides that the insurer will pay the insured 16 percent of $1,000 maximum coverage (or $160) for
“dilation and currettage (nonpuerperal), and/or removal of polyps.”
The remainder of the $951 judgment included charges for hospital room ($140), miscellaneous hospital expenses ($625), physician’s visit ($10), and out-patient treatment ($16). The insurer alternatively contended that the amount that might be owed under the policy should be limited to the $160 surgical benefit.
Plaintiff’s pregnancy was confirmed by a gynecologist on October 7, 1980. Because of an incomplete spontaneous abortion or miscarriage, plaintiff was hospitalized on October 31. The dilation and currettage was surgically performed on November 1, and plaintiff was discharged from the hospital on November 2, 1980.
The gynecologist repeated the professionally accepted and dictionary definition of puerperal and his understanding of non-puerperal, but refused “to be involved in what an insurance policy covers and what it doesn’t cover.” Puerperal pertains to the puerperium which is defined as the period of confinement of the mother after childbirth or the time following childbirth that it takes the mother’s uterus to return to its normal size. Webster's Third New International Dictionary, 1971. Nonpuerperal is not defined in the several dictionaries we have examined, but obviously is the negative of puerperal.
The surgical benefits section provides coverage for a nonpuerperal D & C but not for a puerperal D & C. Because puerperal literally pertains to the period of time after childbirth, the trial court apparently considered that benefits are specifically provided for a D & C which is required before the puerperium, unless the general exclusion section, quoted above, prevails over the specific inclusion of this coverage. Appellee argues in this vein.
An insurer is required to clearly express exclusions to its insuring obligations and any doubt or ambiguity is to be resolved against the insurer and in favor of what reason and probability dictate was intended by the parties with respect to coverage. Benton Casing Service, Inc. v. Avemco Ins., 379 So.2d 225, 232 (La.1979).
The term nonpuerperal D & C was apparently intended to mean any D & C other than one required as a result of the termination of a pregnancy either by childbirth or by miscarriage. The gynecologist testified that the word “puerperal” most often is talked about “after full delivery ... but it could include after miscarriage, also.” When considered in that sense, the term “nonpuerperal D & C” does not conflict with the language of the general exclusion that no benefits are provided for pregnancy, childbirth, miscarriage, abortion, or any complication arising therefrom, unless maternity benefits are issued with the policy.
The gynecologist explained that a D & C is sometimes performed for reasons other than after termination of a pregnancy, for instance where a patient experiences abnormal uterine bleeding or for the purpose of detecting cancer in the lining of the uterus. Obviously a D & C performed other than after the termination of a pregnancy would not be a complication arising from miscarriage or pregnancy and the exclusion would not apply. Notwithstanding the literal meaning of nonpuerperal (relating to the period of time after childbirth, the puerper-ium), the policy language is not ambiguous when construed in the ordinary sense. This construction gives meaning to both the specific insuring clause and the general exclu *723 sion clause and does not create doubt or ambiguity requiring a contrary result.
This case was submitted to the trial court on a stipulation of fact and the deposition of the gynecologist. Our review in such cases is independent of any presumption of correctness on the part of the trial court. See Fabiano v. Bryan, 438 So.2d 719 (La.App. 2d Cir.1983).
At appellees’ cost, we reverse and render judgment rejecting appellees’ demands.
HALL, J., concurs and assigns written reasons.