516 So.2d 1311 (1987)
Larry M. MARSH and Beverly F. Marsh, Appellee,
v.
RESERVE LIFE INSURANCE COMPANY, Appellant.
No. 19388-CW.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
*1312 Hayes, Harkey, Smith & Cascio, by Bruce E. Mintz, Monroe, for appellant.
Leroy Smith, Jr., Tallulah, for appellee.
Before FRED W. JONES, Jr., SEXTON, and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
We granted a writ in this case to consider whether the trial judge erred in denying defendant's motion for a summary judgment. Concluding that there is no genuine issue as to a material fact and defendant insurance company is entitled to judgment as a matter of law, we reverse.
Larry and Beverly Marsh were insured under a major medical expense insurance policy issued by Reserve Life Insurance Company with an effective date of November 6, 1982. Before purchasing the policy, Beverly Marsh had voluntarily undergone tubal ligation sterilization surgery with the sole purpose of rendering her infertile. In April, 1984, Beverly Marsh was voluntarily hospitalized and underwent surgery in Shreveport to reverse the tubal ligation. The sole purpose of the second surgery was to reconstruct or unobstruct the patient's fallopian tubes so she would be able to conceive and bear children. A rider attached to the policy provided that the insurer *1313 would not have any liability to Beverly Marsh for any loss or disability resulting from her peptic ulcer. Mrs. Marsh's sterilization surgery was not mentioned.
Total charges for the surgery and hospitalization were $5,432.00. The Marshes submitted this claim under the policy, which claim was subsequently denied by the insurer.
On November 15, 1984, the Marshes instituted this action for benefits allegedly due under the policy together with penalties and attorney's fees, asserting that the refusal of the defendant-insurer to pay the claim was arbitrary and capricious. In its answer, the defendant-insurer alleged that the reversal of a voluntary tubal ligation did not result from an injury or sickness nor was it medically necessary as provided by the policy and, therefore, it was excluded from coverage under the clear terms of the policy. The defendant-insurer then filed a motion for summary judgment alleging that there was no genuine issue of material fact. Plaintiffs filed an amended petition alleging that the agent for the defendant-insurer had indicated to them at the time that the policy was sold that it would provide coverage for this type of surgery and this representation was the major inducement for the plaintiffs in purchasing the policy.
The policy provides the following definition of an insured expense:
A charge which:
a) results from an injury or sickness
b) is covered by the policy
c) is incurred while this policy is in force
d) is medically necessary, and
e) is authorized by a physician or surgeon
Injury is defined as:
Accidental bodily injury sustained, directly and independently of all other causes, from an accident occurring while this policy is in force.
Sickness is defined as:
Disease or illness which first manifests itself while this policy is in force ...
Included in the charges which are excluded from coverage under the policy in the exclusion section are those which:
result from elective sterilization ...
The policy contains the standard clause allowing the insured to examine and return the policy within ten days after it is received. The policy will then be voided and any premium paid will be returned by the defendant-insurer.
After reviewing the evidence, the trial court refused to grant defendant-insurer's motion for a summary judgment. In written reasons for judgment, the trial judge simply stated that there was an issue of material fact on the face of the pleadings. There is no indication in the record as to whether the trial court found coverage under the terms of the policy or that the alleged representations of the insurance agent acted to extend the coverage afforded under the policy.
A summary judgment is designed to dispose of frivolous demands and defenses. It is appropriate only when there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. Only when reasonable minds must inevitably concur is a summary judgment warranted, and any doubt should be resolved in favor of the trial on the merits. The summary judgment procedure should be used cautiously and sparingly and any reasonable doubt concerning dispute as to a material issue of fact must be resolved against the granting of the motion for a summary judgment as it is not a substitute for, nor can it take the place of, a trial on the merits. The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for a summary judgment. La.C.C.P. Art. 966. See Sanders v. City of Blanchard, 438 So.2d 714 (La.App. 2d Cir.1983); Ledbetter v. Myers, 438 So.2d 700 (La.App. 2d Cir.1983).
With reference to insurance policies, it is well-settled that the rules which govern the interpretation of written agreements also apply to contracts of insurance.
*1314 The terms and provisions of insurance contracts, as with other written agreements, are to be construed in their general and popular meaning. The insurance contract must be interpreted as a whole and all terms and provisions of the policy must be construed together to ascertain the true intent of the parties. The principal consideration in interpreting insurance policies is to ascertain the intention of the parties from the language of the contracts. The courts must give legal effect to the insurance policy provisions according to the true intent of the parties, which intent is determined by the words of the policy when these are clear and explicit and lead to no absurd consequences. Agreements which have been legally entered into have the effect of law between the parties who form them. Therefore, when the words of the insurance policy are clear and explicit and lead to no absurd consequences, the courts may not alter them. However, ambiguities in an insurance contract will be construed against the insurer and in favor of the insured. It is further well-established that insurers have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations under the policy in the absence of conflicts with laws or public policy. Any exclusion from coverage in an insurance policy must be clear and unmistakable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. See Wallace v. Globe Life and Acc. Ins. Co., 478 So.2d 656 (La.App. 2d Cir.1985); Crowson v. Reserve Life Ins. Co., 438 So.2d 721 (La.App. 2d Cir.1983), writ denied 443 So.2d 583 (La.1983); Messina v. Metropolitan Life Ins. Co., 431 So.2d 911 (La.App. 2d Cir.1983).
With respect to representations by an insurance agent, the jurisprudence has uniformly held that the representations of an agent cannot enlarge or extend coverage beyond what is provided for in the policy. La.R.S. 22:628.
La.R.S. 22:628 provides in pertinent part:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. This section shall not apply to contracts as provided in Part XV of this chapter.
La.R.S. 22:628 is also known as the "entire contract policy" statute. The basic purpose of the statute is that the insured shall have in his possession at all times the entire evidence of the insurance contract. The aim of the statute is to suppress the practice of making documents not annexed to the policy, and of which the insured usually knows nothing, a part of the contract of insurance by reference. Under this statute, the courts have also held that the theory of equitable estoppel can not be used to enlarge or extend the coverage of the insurance policy beyond that set forth in the insurance agreement, even though in some circumstances, equitable estoppel may be imposed to allow recovery on an insurance policy because of the actions of an agent which bind the insurance company. See Jones v. Breaux, 289 So.2d 110 (La.1974); Smith v. Republic National Life Ins. Co., 335 So.2d 739 (La.App. 2d Cir.1976), writ refused, 338 So.2d 706 (La. 1976); McDaniel v. Moore, 351 So.2d 855 (La.App. 2d Cir.1977).
Plaintiffs argue that Mrs. Marsh's inability to have children was a sickness which was not manifested until she desired to conceive and was hospitalized for treatment. Therefore, plaintiffs contend that the condition did not exist before the effective date of the policy. Plaintiffs point out that the sterilization was not included in the rider attached to the policy and if the defendant-insurer wanted to protect itself from liability from this type of claim, it should have been included.
An examination of the pertinent terms of the policy set forth above reveals *1315 that the elective surgery undergone by the plaintiff to reverse her sterilization was excluded by clear and unambiguous language. In the exclusion section of the insurance policy, it is stated that charges which result from elective sterilization are non-recoverable. It is undisputed that plaintiff underwent the tubal ligation solely for contraceptive purposes and then underwent the reversal surgery solely for the purpose of conceiving children. Further, the surgery does not meet the definition of an insured expense as it does not appear from the record that it was medically necessary nor was it the result of an injury or sickness as defined by the policy. The reversal surgery was not the result of an accidental bodily injury sustained from an accident during the policy period. Furthermore, the inability to have children as the result of voluntary sterilization, as opposed to other physical causes, was not a disease or illness manifesting itself while the policy is in force. Thus, the plaintiff's claim is not recoverable under the clear terms of the insurance policy. It resulted from elective sterilization and the inability to have children after the voluntary sterilization is not a "sickness."
Plaintiffs allege they were assured by the insurance agent that the surgery would be covered under the policy provisions and that these representations were the major inducement for them in purchasing the policy. As noted above, the alleged representations by the insurance agent could not act to extend or enlarge the coverage afforded by the policy. The public policy reasons behind this rule of law are readily apparent. It insures that each party is aware of the other party's obligations under the terms of the policy. Therefore, the allegations of such conduct on the part of the insurance agent could not create or establish a genuine issue of material fact.
In summary, it is clear that there was no coverage for the elective surgery under the unambiguous terms of the insurance policy and that the representations of the insurance agent could not act to enlarge or extend coverage under the policy. Therefore, there was no genuine issue of material fact and defendant is entitled to judgment as a matter of law. The trial court erred in refusing to grant the motion for a summary judgment filed by the defendant-insurer.
For these reasons we make the writ peremptory; reverse the judgment of the trial court; render judgment sustaining the motion for summary judgment; and dismiss plaintiffs' suit. All costs, both at the trial level and on appeal, are assessed to plaintiffs-appellees.